IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Kathleen M. Tafoya**

Civil Action No. 14-cv-00219-KMT

SHARYLE A. SOLIS,

      Plaintiff,

v.

TOP BRASS, INC.,

      Defendant.

---

### ORDER APPROVING SETTLEMENT

---

This matter is before the court on the parties' "Joint Motion for Court Approval of Settlement" [Doc. No. 20] ("Joint Mot.).

Plaintiff has asserted claims under the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* ("FLSA") arising out of Defendant'z alleged failure to appropriately compensate her for hours worked over forty in any given week and for making one-half hour daily deductions from Plaintiff's pay for non-bona fide meal breaks. (Compl. ¶¶ 25, 33.)

### *Background*

Defendant Top Brass, Inc. employed Plaintiff as a bookkeeper at its Salida plant from May 1, 2011 through August 28, 2013.   (*Id*. at ¶ 12.)   Plaintiff was paid on a weekly basis.   Plaintiff alleges that when she worked less than forty hours per week, her wages were calculated on a straight hourly basis.   (*Id*. at ¶ 14.)   Plaintiff alleges her pay was reduced improperly, however, when she worked more than forty hours in a given work week by paying her for a maximum of

forty hours no matter how many extra hours she worked.   (*Id*. at ¶ 15.)   By example Plaintiff

alleges that her wages during the week of February 27, 2012 were $1,120.00 (40 x $28.00 [hourly

wage]) even though she worked forty-six and one-half hours, instead of $1393.00 (40 x $28.00

plus 6.5 x $42 [time and a half] =$273.00; $1,120.00 + $273=$1,393.00).   (*Id*.)   However, she

alleges that during the week of January 9, 2012, she worked thirty-six hours and her weekly wage

was decreased to $1,008.00 (36 x $28.00).   (*Id*. at ¶ 14.)   Plaintiff also alleges that Defendant

made a one-half hour meal break deduction for each day she worked for Defendant, even though

she was not completely relieved from her job duties during meals and frequently ate lunch at her

desk while answering phone calls incoming to Defendant's business.   (*Id*. at ¶ 18.)   She also

claims that her meal breaks were often interrupted by other employees, as well as by her manager

and the Defendant's CPA, to discuss business.   (*Id*.)

Plaintiff filed this case on January 27, 2014, and the Defendant filed its answer on February

19, 2014.   A Scheduling Order was entered on May 6, 2014, and in conjunction with filing their

consent to the jurisdiction of the Magistrate Judge [Doc. No. 21], filed the Joint Motion.

### *Legal Standard*

"Congress enacted the FLSA in 1938 with the goal of protect[ing] all covered workers

from substandard wages and oppressive working hours."   *Christopher v. SmithKline Beecham*

*Corp.*, --- U.S. ----, 132 S. Ct. 2156, 2162 (2012) (citation and internal quotation marks omitted).

The "prime purpose" in enacting the FLSA "was to aid the unprotected, unorganized and lowest

paid of the nation's working population; that is, those employees who lacked sufficient bargaining

power to secure for themselves a minimum subsistence wage."   *Brooklyn Savings Bank v. O'Neil*,

324 U.S. 697, 707 n.18 (1945).

To help further its goals, the FLSA provides that an employee or multiple employees may

bring an action "in behalf of himself or themselves and other employees similarly situated."

29 U.S.C. § 216(b).   When employees file suit against their employer to recover back wages

under the FLSA, the parties must present any proposed settlement to the district court for review

and a determination of whether the settlement agreement is fair and reasonable.   *See Lynn's Food*

*Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982); *Baker v. Vail Resorts*

*Management Co.*, Case No. 13-cv-01649-PAB-CBS, 2014 WL 700096 (D. Colo. Feb. 24, 2014).

Requiring court approval of FLSA settlements effectuates the purpose of the statute.   *Brooklyn*

*Sav. Bank v.   O'Neil,* 324 U.S. at 706 (1945).   To approve the settlement agreement, the Court

must find that (1) the litigation involves a bona fide dispute, (2) the proposed settlement is fair and

equitable to all parties concerned, and (3) the proposed settlement contains a reasonable award of

attorneys' fees. *Lynn's Food Stores*, 679 F.2d at 1354; *Baker*, 2014 WL 700096, at \*1.

### *Analysis*

#### *A.      Bona Fide Dispute*

Parties requesting approval of an FLSA settlement must provide the Court with sufficient

information to determine whether a bona fide dispute exists.   *Baker*, 2014 WL 700096, at \*1;

*Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227, 1234 (M.D. Fla. 2010).   To meet this obligation,

the parties must present: (1) a description of the nature of the dispute; (2) a description of the

employer's business and the type of work performed by the employees; (3) the employer's reasons

for disputing the employees' right to a minimum wage or overtime; (4) the employees'

justification for the disputed wages; and (5) if the parties dispute the computation of wages owed,

each party's estimate of the number of hours worked and the applicable wage.   *Id.; Collins v.*

*Sanderson Farms, Inc*., 568 F. Supp. 2d 714, 718 (E.D. La. 2008).   The mere existence of an

adversarial lawsuit is not enough to satisfy the bona fide dispute requirement. *Id*.

Defendant operates an ammunition-casing reconditioning business.   (Joint Mot. at ¶ 6.)

As noted *supra*, Plaintiff claims that Defendant withheld payment, both at her regular and

overtime rate, for hours worked in excess of 40 in any given week and deducted time for meal

breaks where the Plaintiff was actually working.   Plaintiff points to records from Defendant's

electronic timekeeping system to show that she worked overtime.   (Joint Mot. at ¶ 6.)   Defendant

admits that it did not pay Plaintiff on a salary basis (Answer [Doc. No. 11] at ¶ 3) and admits it

"paid Plaintiff at an hourly rate for each hour worked up to forty (40) each workweek" (Ans. at

¶16) but otherwise denies the Plaintiff's allegations.   Defendant also raised a number of

affirmative defenses.   Further, Defendant contends that Plaintiff manipulated Defendant's

timekeeping system by making manual entries into the system rather than using the system's

fingerprint scanner to clock in and clock out for work.   (Joint Mot. at ¶ 6.)   Additionally,

Defendant contends that Plaintiff, whose job responsibilities included submitting weekly reports

to Defendant's parent company for the processing of payroll for all of Defendant's hourly

employees (including Plaintiff), submitted reports indicating that she routinely did not work

overtime hours or through her lunch break, and that Defendant paid Plaintiff for all working hours

that she reported to Defendant through her weekly payroll reports.   (*Id.*)

The Supreme Court has defined sham litigation as a lawsuit which is objectively baseless

in the sense that no reasonable litigant could realistically expect success on the merits.  *Prof'l*

*Real Estate Investors, Inc. v. Columbia Pictures Indus.,* 508 U.S. 49, 60–61 (1993).  *See also*

*Total Renal Care, Inc. v. Western Nephrology and Metabolic Bone Disease, P.C.*, Case No.

08-cv-00513-CMA-KMT, 2009 WL 2596493, at *9 (D. Colo. Aug. 21, 2009).  Sham litigation by

definition does not involve a bona fide grievance.  *Protect Our Mountain Environment, Inc. v.*

*District Court*, 677 P.2d 1361, 1369 (Colo. 1984).  The court finds that this case is not sham

litigation and that it very much involves a bona fide dispute between adversarial opponents.

### B.       Fair and Equitable Settlement Agreement

Plaintiff estimates that she performed unpaid regular and overtime compensation totaling

approximately $23,365.19 in actual damages.  (Joint Mot. at ¶ 6.)  Defendant disputes that any

money is owed to Plaintiff and contends that Plaintiff has been paid for all of her regular and

overtime hours worked for Defendant.  As part of the Settlement Agreement in this case, certain

monetary and other considerations were agreed to between the parties to resolve the dispute;

however, the defendant specifically maintains that Plaintiff is not entitled to compensatory

damages of any kind arising out of her allegations regarding pay.  (Restricted Confidential

Settlement Agreement ("Rest. S.A.") [Doc. No. 25] at 1.)  The court has reviewed, *in camera*, the

terms of the agreement and finds that the monetary terms are fair and equitable based on the

Plaintiff's allegation of $23,365.19 in total wage loss.

To be fair and reasonable, an FLSA settlement must provide adequate compensation to the

employee and must not frustrate the FLSA policy rationales.  Courts considering both individual

and collective settlements under the FLSA turn to the factors for evaluating the fairness of a class action settlement under Fed. R. Civ. P. Rule 23(e). *Gambrell v. Weber Carpet, Inc.,* No. 10–131–KHV, 2012 WL 5306273, at *3 (D. Kan. Oct. 29, 2012); *Hobbs v. Tandem Environmental Solutions, Inc.,* No. 10-1204-KHV, 2012 WL 4747166, at *2 (D. Kan. Oct. 4, 2012); *McCaffrey v. Mortg. Sources, Corp.*, No. 08–2660–KHV, 2011 WL 32436, at *5 (D. Kan. Jan. 5, 2011). The Tenth Circuit considers the following factors when deciding whether to approve a class action settlement under Fed. R. Civ. P. 23(e): (1) whether the parties fairly and honestly negotiated the settlement; (2) whether serious questions of law and fact exist which place the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted litigation; and (4) the judgment of the parties that the settlement is fair and reasonable. *Rutter & Wilbanks Corp. v. Shell Oil Co*., 314 F.3d 1180, 1188 (10th Cir. 2002).

This Settlement Agreement was the product of arm's-length negotiations by experienced counsel. (Joint Mot. at ¶ 9.) The parties represent that they negotiated the agreement over a two month time frame and concluded that "serious questions cast doubt on the ultimate outcome of [the] litigation." (*Id.*) The parties represent that in their view it was not possible to "predict how a trier of fact would decide the parties' bona fide dispute over whether Plaintiff did, in fact, perform work during her lunch breaks and in excess of 40 hours per week—especially in light of the conflicting time records that exist with respect to Plaintiff's work for Defendant." (*Id.*)

Under these circumstances, a presumption of fairness attaches to the proposed settlement. *See Lynn's Food Stores, Inc.,* 679 F.2d at 1354 (recognizing courts rely on the adversary nature of

a litigated FLSA case resulting in settlement as indicia of fairness); *see also In re BankAmerica Corp. Secs. Litig.,* 210 F.R.D. 694, 700 (E.D. Mo. 2002) ("In evaluating the settlement, the Court[] should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation; a presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery."). The Court sees no evidence of fraud or collusion or any other factor which would undermine this presumption here.

Next, the Court must determine whether the settlement agreement undermines the purpose of the FLSA, which is to protect employees' rights from employers who generally wield superior bargaining power. To determine whether a settlement agreement complies with the FLSA, courts look at the following factors: (1) presence of other similarly situated employees; (2) a likelihood that plaintiff's circumstances will recur; and (3) whether defendants had a history of non-compliance with the FLSA. *Baker*, 2014 WL 700096, at \*2. The record shows that no other similarly situated employees have sought to join this action and it appears that Plaintiff's claims are unique unto herself and the role she played in the business, especially with regard to lunch break interruptions. The parties agree that there are no similarly situated employees. (Joint Mot at ¶ 11.) In addition, there is no evidence that Defendant's alleged failure to comply with the FLSA represents a continuing violation or is part of widespread conduct. (*Id*.) Moreover, Plaintiff is no longer employed by Defendant. (Compl. at ¶ 121.) Because of the uniqueness of Plaintiff's position, the importance of public access to the settlement agreement is significantly undercut and the court finds the confidentiality of the settlement agreement to be appropriate.

In light of all the circumstances, and for the reasons discussed above, the Court finds that the settlement is fair and reasonable and, as set forth below, provides an adequate provision for the payment of Plaintiffs' attorney fees.

### C.    *Attorney Fees*

The parties represent that Plaintiff's recovery was addressed independently of attorneys' fees considerations and that her recovery was not influenced by the issue of attorneys' fees.   (Joint Mot. at ¶ 12.)   However, the Court must still examine whether the award of $13,333.33 contingency attorney fee (which also covers costs in the amount of $450.00) is reasonable.  *See Silva v. Miller*, 307 Fed. Appx. 349, 351–52 (11th Cir. 2009) (unpublished) (holding that contingency contract between counsel and plaintiff did not abrogate court's duty to review the reasonableness of legal fees in an FLSA settlement).   To determine the reasonableness of a fee request, a court must begin by calculating the "lodestar amount," which represents the number of hours reasonably expended multiplied by a reasonable hourly rate.  *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Balkind v. Telluride Mountain Title Co*., 8 P.3d 581, 587–88 (Colo. App. 2000).   A party seeking an award of attorneys' fees must establish the reasonableness of each dollar and each hour for which the party seeks an award.  *Jane L. v. Bangerter*, 61 F.3d 1505, 1510 (10th Cir.1995).

Once ascertained, the lodestar amount may be adjusted based upon several factors, including the amount in controversy, the length of time required to represent the client effectively, the complexity of the case, the value of the legal services to the client, awards in similar cases, and

the degree of success achieved.   *See Tallitsch v. Child Support Servs., Inc*., 926 P.2d 143, 147

(Colo.App.1996).

In this case, Plaintiff's FLSA attorney fee award is contingent on a successful litigation

outcome.   Such "contingency fees provide access to counsel for individuals who would otherwise

have difficulty obtaining representation . . . and transfer a significant portion of the risk of loss to

the attorneys taking a case.   Access to the courts would be difficult to achieve without

compensating attorneys for that risk." *Capsolas v. Pasta Res. Inc*., 10-CV-5595 RLE, 2012 WL

4760910, at *8 (S.D.N.Y. Oct. 5, 2012)(internal citation omitted).   Counsel represent that many

individual litigants, including the plaintiff here, "cannot afford to retain counsel at fixed hourly

rates . . . but yet are willing to pay a portion of any recovery they may receive in return for

successful representation."   (Joint Mot. at ¶ 12, citing *Capsolas*, 2012 WL 4760910, at *8.)

The parties submitted an Affidavit from Plaintiff's counsel, showing that Brandt Milstein

worked 47.3 hours on this case; thus, the amount of money attributed to attorneys' fees in this case

comes out to an hourly rate of $272.37.   (Joint Mot., Ex. 1.)   Mr. Milstein's Affidavit attaches a

detailed hourly accounting (Joint Mot., Ex. 1, Attach. A.)   Upon review the court finds that the

hours spent on the case between December 10, 2013 and July 8, 2014 by Mr. Milstein are

reasonable based upon the type and complexity of the case.

A "reasonable rate" is defined as the prevailing market rate in the relevant community for

an attorney of similar experience.   *Guides, Ltd. v. Yarmouth Group Prop. Mgmt., Inc*., 295 F.3d

1065, 1078 (10th Cir. 2002).   The party requesting fees bears "the burden of showing that the

requested rates are in line with those prevailing in the community. . . ." *Ellis v. Univ. of Kan. Med.*

*Ctr.*, 163 F.3d 1186, 1203 (10th Cir.1998).   Because the parties have not provided any additional

evidence in support of the proposed rate, the Court can adjust the rate based on its own familiarity

with the range of prevailing rates in the Denver market.   *Guides, Ltd.*, 295 F.3d at 1079 ("Where a

district court does not have before it adequate evidence of prevailing market rates, the court may

use other relevant factors, including its own knowledge, to establish the rate").   The Court finds

that $272.37 is a reasonable hourly rate in FLSA cases for attorneys of Mr. Milstein's experience.

*See, e.g., Olivares v. UFP Lafayette, LLC*, No. 12–cv–01082–CMA–KLM, 2013 WL 2477124, at

*1 (D. Colo. June 10, 2013) (approving $280 hourly rate for lead counsel and $200 hourly rate for

associate attorney in FLSA case); *Horne v. Scott's Concrete Contractor, LLC*, No. 12–cv–01445–

WYD–KLM, 2013 WL 3713905, at *10 (D. Colo. April 24, 2013) (finding $250 and $200

reasonable hourly rates for attorneys in FLSA case).   As such, the $13,333.33 awarded as

attorneys' fees and costs as part of the settlement is reasonable.

The parties' settlement agreement is, therefore, approved.

## *Conclusion*

The parties' Joint Motion requests that the Court, upon approval of the settlement

agreement, enter a stipulated judgment.   (Joint Mot. at 7.)   The parties have also agreed that

"within seven days of clearance of the settlement checks Solis agrees to dismiss this action with

prejudice."   (Rest. S.A. at 4.)   Therefore, the court will await the filing of a stipulated motion to

dismiss before entering final dismissal.

WHEREFORE , it is **ORDERED**

1.       The "Joint Motion for Court Approval of Settlement" [Doc. No. 20] is

**GRANTED.**

2.       No later than thirty days from this Order the Parties will file a joint stipulated

Motion to Dismiss this case with prejudice

Dated this 3rd day of September, 2014.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge